COMMONWEALTH of Pennsylvania, Appellee,

v.

William R. STAFFORD, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 26, 2000.

Filed March 16, 2000.

Reargument Denied March 28, 2000.

Samuel C. Stretton, West Chester, for appellant.

Marianne K. Fogelsanger, Asst. Dist. Atty., Harrisburg, for the Com., appellee.

Before POPOVICH, EAKIN, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 William Stafford appeals his convictions for possession of a controlled substance with the intent to deliver, conspiracy, possession of a controlled substance, possession of drug paraphernalia, and corruption of a minor. The convictions arose from his growing marijuana in his home and exposing his then fifteen-year-old wife to the marijuana from April 22, 1997 to April 29, 1997. We affirm.

¶ 2 Initially, we must note our disapproval with appellant's counsel's brief in this matter. The statement of questions involved encompasses five pages, and his numbered items each include more than one question.[1] Not only is this a violation of the Pennsylvania Rules of Appellate Procedure,[2] it is a disservice to counsel's client and this court. It makes review of this matter unnecessarily time consuming and difficult. Although it is within our power to quash the appeal, see *Sell v. Sell*, 714 A.2d 1057, 1059 (Pa.Super.1998), we decline to do so in the interests of justice.

¶ 3 Appellant first argues that the district attorney failed to disqualify himself due to a conflict of interest and the court erred in failing to remove him and his office from the case. A brief recounting of the procedural chronology is necessary to understand the issue.

¶ 4 Appellant and his wife filed various civil actions and a private criminal complaint against Bradford County District Attorney Robert McGuinness arising from this matter.[3] Appellant alleged in pre-trial motions that this caused a conflict of interest and that there was a possibility that the district attorney was a necessary witness in the case. He contended that this conflict mandated removal of the district attorney's office. On November 6, 1998,

---

1. For example, appellant's first "question" is: Did the District Attorney have both a direct and indirect conflict of interest and personal animus and should the District Attorney have been disqualified from trying the case and/or not have tried the case? Did the failure to disqualify the District Attorney deny Mr. Stafford his right to due process and a fair trial and did the court err in not removing the District Attorney and did the District Attorney err in not disqualifying himself? Further, did the failure of the Attorney General to intervene not preclude the disqualification of the District Attorney? Appellant's brief, at 3. Rather than being a one concise question of law, this argument contains at least six particularized questions.

2. Rule 2116 provides in pertinent part:

The statement of questions involved must state the question or questions in the *briefest and most general terms*, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines[ and] *must never exceed one page* .... *This rule is to be considered in the highest degree mandatory, admitting of no exception.* Pa.R.A.P. 2116(a) (emphasis added).

3. Appellant's wife sued the district attorney for his actions arising out of a search of appellant's home. Later, appellant sued the district attorney for alleged intimidation of a radio station manager to prevent appellant from advertising on the station. Appellant later brought a criminal complaint against the district attorney for conduct during appellant's arrest.

the trial court, pursuant to the Commonwealth Attorneys Act, referred the matter to the President Judge of the Middle District to request that the state attorney general intervene in the case and replace the district attorney. In a letter dated January 20, 1999, the attorney general declined to intervene in the matter. Subsequently, the court found that "the Bradford County District Attorney's Office was the only entity left to prosecute the case," and that appellant did not demonstrate that the district attorney was, in fact, a necessary witness, and, regardless, that it had no power to remove the office under Pennsylvania law. District Attorney McGuinness did ultimately prosecute the case himself, but was not called as a witness.

¶ 5 The Commonwealth Attorneys Act provides that the Attorney General may prosecute a county criminal court case "[w]hen the president judge in the district having jurisdiction of any criminal proceeding *has reason to believe* that the case is a proper one for the intervention of the Commonwealth ... [and] ... the Attorney General agrees that the case is a proper one for intervention." 71 P.S. § 732–205(a)(5) (emphasis added). The Act also provides that "[i]f the Attorney General determines that the case is not a proper case for intervention, he shall notify the president judge accordingly." *Id.*

¶ 6 Appellant argues that the court's order asking the president judge to request that the attorney general intervene was a finding that there was a conflict of interest precluding the district attorney's office from prosecuting him. In its Rule 1925(b) statement, however, the trial court explained that it made no such finding; rather, "all [it] found by that order was that, based on the record made by the Assistant District Attorney at the argument on November 4, 1998, [it] then had *reason to believe* that this case was a proper one for the intervention of the Attorney General." Trial Court Rule 1925(b) Opinion, at 8 (emphasis added). We agree

that a "reason to believe" is not equivalent to a conclusive determination.

¶ 7 Absent an abuse of discretion, we are constrained to accept the trial court's finding that there was no conflict of interest. *See Commonwealth v. Khorey*, 521 Pa. 1, 555 A.2d 100, 110 (1989). A "prosecution is barred when an actual conflict of interest affecting the prosecutor exists in the case; under such circumstances a defendant need not prove actual prejudice in order to require that the conflict be removed." *Commonwealth v. Eskridge*, 529 Pa. 387, 604 A.2d 700, 702 (1992). Mere allegations of a conflict of interest, however, are insufficient to require replacement of a district attorney. *See Commonwealth v. Mulholland*, 549 Pa. 634, 702 A.2d 1027, 1037 (1997).

¶ 8 There are no reported cases in Pennsylvania where a defendant sought to remove a district attorney because the defendant has brought civil or criminal allegations against the district attorney for actions arising from the charges against the defendant. We have found an impermissible conflict exists where the district attorney has a financial interest in obtaining defendant's conviction. *See Eskridge*, 604 A.2d at 701 (finding a conflict where district attorney's law firm was representing car accident victims in personal injury suit against defendant). *But see Commonwealth v. Jermyn*, 551 Pa. 96, 709 A.2d 849, 860 (1998) (finding no actual conflict where prosecutor resigned his executor's duties of victim's estate before prosecuting defendant). We have also found that a new trial is warranted where the district attorney has a non-economic, personal interest in the matter. *See Commonwealth v. Balenger*, 704 A.2d 1385, 1386 (Pa.Super.1997) (granting a new trial where the prosecutor was involved in a romantic relationship with the defendant's wife), *appeal denied* 556 Pa. 670, 727 A.2d 126 (1998). Here, by contrast, the trial court found, and we agree, that the district attorney had no pecuniary or personal interest in seeing appellant prosecuted, and that ap-

pellant's conviction would not affect the pending civil suits or criminal complaint. Mere animosity, even it if it existed, is not sufficient by itself to require replacement of a prosecutor. Therefore, the prosecution by the district attorney did not compromise appellant's rights.

■ ¶ 9 As we agree with the trial court's determination that replacing the district attorney's office was not required in this case, we need not speculate on the action to be taken by trial courts in cases where a real conflict exists and the Attorney General, nonetheless, declines to intervene. Nor do we intimate that an entire district attorney's office must be disqualified if one prosecutor must be. We note in passing, however, that if an entire district attorney's office does have a real conflict of interest, it would undoubtedly be a violation of a defendant's right to due process for the office to prosecute a matter under such circumstances, even if it is the "only entity left to prosecute the case."

¶ 10 Appellant next contends in two separate arguments that the court erred in allowing two witnesses to testify that they observed appellant smoking marijuana before the time in question. The bill of information charged appellant with various crimes occurring "between Tuesday, the 22nd day of April, 1997, and Tuesday, the 29th day of April, 1997." Bill of Information, at 1. One witness, Joseph Walburn, testified on direct examination that he observed appellant smoking marijuana in appellant's home in the presence of other people including appellant's wife on unspecified occasions. *See* N.T., 2/16/99, at 50 (testifying that marijuana smoking occurred "[m]ost of the time[s]" he was present). Another witness, Gregory Weisbrod, testified that he smoked marijuana with appellant outside appellant's home.[4] Appellant argues that this testimony is inadmissible evidence of prior criminal conduct. We agree, but find that the admission of the statements was harmless error.

■ ¶ 11 We will not invalidate a trial court's decision to admit evidence absent an abuse of discretion. *See Commonwealth v. Breslin*, 732 A.2d 629, 631–32 (Pa.Super.1999). In general, evidence of uncharged crimes and prior bad acts is inadmissible to demonstrate a defendant's propensity to commit the crime charged. *See Commonwealth v. Lilliock*, 740 A.2d 237, 245 (Pa.Super.1999). Our Supreme Court has stated that

> The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts. There are, of course, important exceptions to the rule where the prior criminal acts are so closely related to the crime charged that they show, inter alia, motive, intent, malice, identity, or a common scheme, plan or design.

*Commonwealth v. Stanley*, 484 Pa. 2, 398 A.2d 631, 633–34 (1979).

\* \* \*

> MR. STRETTON: He's brought out, unrelated criminal activity of Mr. Stafford, this man will tell you he's not smoked any marijuana with him in years, but that they did in high school.
> MR. McGUINNESS [District Attorney]: Something like that.

N.T. 2/18/99, at 66.

Although not entirely clear, it appears from the context of the testimony that the witness testified that he smoked marijuana with defendant, but not in his home.

---

4. The actual testimony and the colloquy that followed was as follows:

> Q: Is it your testimony that you didn't make a prior inconsistent statement yesterday [that you smoked marijuana in defendant's home] in the District Attorney's Office?
> A: Sir, I believe you asked me if I had ever smoked marijuana with Mr. Stafford and I told you I had.
> Q: Oh, okay. So you're saying that you didn't smoke it at his residence, —
> A: No.
> MR. STRETTON [Defense Counsel]: Objection and move for a mistrial.

¶ 12 The Commonwealth argues that the earlier marijuana use indicates appellant's knowledge and intent of his crimes. " 'To be admissible to show intent or motive, the evidence must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.' " *Commonwealth v. Camperson*, 417 Pa.Super. 280, 612 A.2d 482, 484 (1992) (quoting *Commonwealth v. Brown*, 280 Pa.Super. 303, 421 A.2d 734, 736 (1980)). In the present matter, there is no "direct and logical connection" between appellant's drug use prior to the time period in question and the charged crimes other than they both involved marijuana. *Commonwealth v. LeGares*, 709 A.2d 922, 926 (Pa.Super.), *appeal denied* 556 Pa. 705, 729 A.2d 1127 (1998). Appellant does not claim that he did not know about marijuana; he maintains that he was not aware that it was in his home in the period referenced in the bill of information. Joseph Walburn testified only that he smoked marijuana in appellant's home during an unspecified period and Gregory Weisbrod testified that he never smoked marijuana in appellant's home at all. Neither of this testimony was probative to the charged crimes and should have been excluded.[5]

¶ 13 We also find the court's rationale for admitting the statements equally unpersuasive. The court noted:

> When the District Attorney called Weisbrod as a witness, he may very well have been aware that the Appellant also would also be calling Weisbrod as a such a character witness. The District Attorney was certainly aware that Weisbrod was friendly with Appellant. This might have caused the prosecutor to bring out the marijuana smoking, seeking to impeach the anticipated later testimony. Although such anticipatory impeachment is improper, impeaching a character witness who testifies that the defendant's reputation is for being a law-abiding citizen by testing the witness's knowledge of the defendant's criminal acts is not improper. Weisbrod did, in fact, later testify as such a character witness for the Defendant. Thus, the error, if there was any, was cured.

Trial Court Opinion, at 15 (citations omitted).

¶ 14 In a criminal case, evidence designed to reflect a defendant's bad character is inadmissible unless "the accused *first* elects to introduce evidence of his or her good character." *Commonwealth v. Stilley*, 455 Pa.Super. 543, 689 A.2d 242, 251 (1997) (emphasis added); *see also* Pa.R.E. 404(a)(1) ("Evidence of a person's character ... is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except ... [I]n a criminal case, [such evidence] is admissible when offered by the accused, or by the prosecution *to rebut the same*.") (emphasis added). In the present matter, the Commonwealth elucidated appellant's prior drug use in its case-in-chief without appellant initiating the line of inquiry. This is improper, and the fact that appellant did later choose to recall Mr. Weisbrod to testify as character witness did not "cure" the error.

¶ 15 Not all improper references to prior bad acts will mandate a new trial, however. "Mere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference." *Commonwealth v. Blystone*, 555 Pa. 565, 725 A.2d 1197, 1204–05 (1999). "Harmless er-

---

**5.** Appellant also argues that the prosecutor made improper reference to Mr. Weisbrod's testimony about prior drug use in his closing argument. Because he made no objection to these remarks at that time, we deem any error made waived. *See Commonwealth v. Banks*, 450 Pa.Super. 555, 677 A.2d 335, 341 & n. 5 (1996) (noting that even under the amended Rules of Civil Procedure "a timely objection at trial is still required in order to preserve the issue for appellate review") (citing *Commonwealth v. Garcia*, 443 Pa.Super. 414, 661 A.2d 1388, 1392 n. 9 (1995)).

ror is present when the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *See Commonwealth v. Garcia*, 551 Pa. 616, 712 A.2d 746, 749 (1998). We find that there was enough independent evidence for the jury to conclude that appellant was growing marijuana in his home, and therefore the admission of the uncharged crimes was harmless error.

¶ 16 Appellant next argues that the search of appellant's house was improper. He claims that unspecified evidence should have been suppressed because the warrant used to search appellant's home was based on the observations of Joseph Walburn, an informant that appellant claims was acting as a government agent at the times he entered appellant's home.

¶ 17 In reviewing the denial of a motion to suppress evidence, we may only review whether the record supports the trial court's factual findings and whether the trial court's legal conclusions drawn from the facts are in error. *See Commonwealth v. Merkt*, 411 Pa.Super. 127, 600 A.2d 1297, 1298 (1992).

¶ 18 Mr. Walburn initially approached Police Officer Scott Mondock on March 24, 1997 to report that appellant was importing seeds from Amsterdam to grow marijuana. Officer Mondock and Mr. Walburn met on several occasions after that, and on April 10, 1997, Mr. Walburn told the officer that he observed marijuana plants at appellant's residence. Officer Mondock instructed Mr. Walburn to contact him "[I]f he hears, sees—anything—hears anything." N.T. Suppression hearing, at 130. On April 19, 1997, Mr. Walburn signed papers to officially make him a police informant and the officer told him to search for marijuana plants. Subsequently, on April 27, 1999, Mr. Walburn informed Officer Mondock that he had seen approximately 160 marijuana plants on the second floor of appellant's home. Based on this information, the police obtained the search warrant used to search appellant's residence.

¶ 19 The court below found that Mr. Walburn was a government agent on April 27, 1997. He concluded that the observations he made on that date could not be used to determine probable cause because "evidence gathered through a search by a private individual must come to the state upon a 'silver platter,' and not as a result of any instigation by state authorities or participation by them in the illegal activities." Trial Court Opinion, 8/18/97, at 8 (quoting *Commonwealth v. Borecky*, 277 Pa.Super. 244, 419 A.2d 753, 755 (1980)). The court found, however, that the informant was not acting at the direction of the police before that time and that probable cause was established from those earlier observations. We find that Mr. Walburn was a government agent during that entire period but uphold the search on entirely different grounds.

¶ 20 In *Commonwealth v. Rathfon*, 705 A.2d 448 (Pa.Super.1997), *cert. denied*, —— U.S. ——, 120 S.Ct. 223, 145 L.Ed.2d 187 (1999), we determined that the paramour of the defendant was a government agent because a police officer asked her to go into the defendant's home and "just report back ... what she saw." *Id.* at 451. Here, Officer Mondock told Mr. Walburn to investigate and report what he saw or heard. We find that was sufficient to make the informer a government agent for purposes of state action.

¶ 21 The Fourth Amendment protects individuals from unreasonable governmental intrusions into areas where they have reasonable expectations of privacy. *See Commonwealth v. Davis*, 743 A.2d 946, 1999 WL 1063166, at *2 (Pa.Super. Nov.24, 1999). "An expectation of privacy is present when an individual, by his conduct, exhibits an actual expectation of privacy and that the subjective expectation is one that society is prepared to recognize as seized." *Id.* Therefore, to have a rea-

sonable expectation of privacy, a person must manifest an intention to exclude others as well as exhibit that intent. *See Rathfon*, 705 A.2d at 451. Because we find that appellant consented to Mr. Walburn's presence in his home, we hold that appellant did not have an expectation of privacy in what the informer observed.

¶ 22 In *Rathfon*, although the defendant's paramour was directed by the police to report what she observed in his residence, we determined that he consented to her presence. We quoted the trial court, which said

> "This is a chance that people take when people come into their house. If you invite a police officer to a party and he sees what you don't want him to see that's your tough luck. And certainly inviting a woman into the house, if she were a licensed officer and she were there under these circumstances, that is a chance you take, you have no expectation of privacy. It's nothing at all like sending someone down there surreptitiously and breaking into the house."

*Id.* at 452 (citing Notes of Testimony).

¶ 23 This case is concededly less cut and dry than *Rathfon*. There, the paramour had three children by the defendant and had lived with him for a period of time. *See id.* In the present matter, while there was no intimate relationship, appellant and the informer knew each other for at least four to five months. There is no dispute that appellant willingly invited him into his home. We hold that appellant had no reasonable expectation of pri-

vacy in those areas that would be open to Mr. Walburn's plain view during his visits.[6] Therefore the court properly denied appellant's motion to suppress.

¶ 24 Appellant next claims that certain comments by the prosecutor in closing arguments tainted the trial. He argues that the prosecutor interjected his own personal opinion into the argument and that he violated "the Golden Rule" by asking the jury to put themselves in the place of a witness. He concludes that these statements warrant a new trial.[7]

¶ 25 Not all inappropriate comments by the Commonwealth merit a new trial. "[C]omments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and a hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Speight*, 544 Pa. 451, 677 A.2d 317, 324 (1996). Even if the prosecutor makes improper remarks, the action to be taken is within the discretion of the trial court because it has the opportunity to see the atmosphere and context in which the comments were made. *See Commonwealth v. Silvis*, 445 Pa. 235, 284 A.2d 740, 741 (1971).

¶ 26 Several times in his closing argument, the prosecutor prefaced his arguments regarding the Commonwealth's position regarding the evidence presented at trial with, "I think" or "We think."[8]

---

**6.** The record does not indicate whether the marijuana plants were actually in the plain view of the informant. Appellant does not argue that they were not, and we assume that they were.

**7.** Appellant also intimates that the prosecutor improperly suggested that the appellant should have introduced exculpatory evidence. He cites no authority for why this comment was inappropriate, however, and we do not address the argument.

**8.** For example, at one point, the prosecutor stated "I don't think that the fact that we

didn't find greenhouses supports the proposition that Mr. Walburn was trying to set anyone up and I think the evidence suggests— [Objection]." N.T. 2/19/99, at 78. At another point, he argued "I don't think there's any evidence that makes any paint cans or odor of paint or anything significant here . . . [Objection]." *Id.* at 86. At a third point, the prosecutor argued "we think that he possessed that controlled substance there with intent to manufacture, based— [Objection]." *Id.* at 89. The court sustained defense counsel's objections but denied counsel's motions for mistrial.

Appellant argues that these statements constitute improper opinion. We disagree.

¶ 27 "[A] prosecutor must limit his statements to the facts introduced at trial and the legitimate inferences therefrom, and may not inject his personal opinion of a defendant's credibility into evidence." *Commonwealth v. Bullock*, 384 Pa.Super. 269, 558 A.2d 535, 539 (1989). The Commonwealth, however, "is free to argue that the evidence leads to guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence." *Commonwealth v. Sam*, 535 Pa. 350, 635 A.2d 603, 608 (1993). We find that the prosecutor was not attempting to express his personal belief as to the evidence; rather, he intended to "urge the jury to make a fair inference from the facts adduced at trial." *Commonwealth v. Martin*, 273 Pa.Super. 88, 416 A.2d 1102, 1104 (1979); *see also Commonwealth v. Gunderman*, 268 Pa.Super. 142, 407 A.2d 870, 873 (1979) ("Though the prosecutor used the first person ['I think'] in this part of his argument, the inferences he was urging were to be based strictly upon the evidence.").

¶ 28 The prosecutor made comments in closing regarding Mr. Walburn, the individual who informed the police about appellant's drug activities after being asked to become involved by appellant. The prosecutor stated to the jury:

> Think about, in your life, someone close to you, someone that you're with on a daily basis, be it a co-worker, or a spouse, a girlfriend, a buddy that you go down and have a beer with now and then, all of a sudden, they get you in the middle of some criminal activity. Now, you got to think about it. Do I go to the police or what do I do?

N.T., 2/19/99, at 83.

Appellant argues that this statement violates the "Golden Rule" prohibition against asking the jury to put themselves in the place of a witness in order to inflame their passions.

¶ 29 Contrary to appellant's assertions, the prosecutor's words here were not designed to inflame the passions of the jury to place the rights of a victim over the rights of the accused. *See, e.g., Commonwealth v. Cherry*, 474 Pa. 295, 378 A.2d 800, 803 (1977). Instead, they were intended to bolster the credibility of Mr. Walburn by allowing the jury to use its common sense and experience to imagine why he would go to the police and become an informer. The comment was isolated and merely was intended to counter appellant's claim that he was set up by others. *Cf. Commonwealth v. Clark*, 280 Pa.Super. 1, 421 A.2d 374, 379 (1980) ("The statements to which appellant objects were of very limited duration and were not part of an apparent attempt to focus the jury's attention on issues not before them or to invite them to render an unreasoned verdict."), *aff'd*, 501 Pa. 393, 461 A.2d 794 (1983).

¶ 30 Appellant next argues that the trial court declined to instruct the jury that his wife was an emancipated minor because of her marriage to appellant, and, therefore, appellant could not be guilty of corruption of a minor. He proposed an instruction that stated: "A child under the age of 18 years who is legally married is considered an emancipated person in the eyes of the law.... An emancipated minor who is married cannot be corrupted by her husband." Appellant's brief, at 52.

¶ 31 An individual commits the crime of corruption of a minor if he or she, "being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age." 18 Pa.C.S.A. § 6301. The code does not define the word "minor." There is no recorded case law addressing whether a married minor's morals can be corrupted by his or her spouse. We hold that they can under the current criminal code.

¶ 32 Appellant's reliance on his belief that his wife is "emancipated" is misplaced. Even if his wife *was* emanci-

pated, appellant could still be found guilty of corruption of a minor. The legislature has deemed that are certain activities that a minor may not do, and activities that adults may not participate in with a minor, even if the minor is "emancipated." For example, emancipated minors may not vote, see Pa. Const. Art. VII, § 1 (as superseded by U.S. Const. Amend. XXVI); sit on a jury, see 42 Pa.C.S.A. § 4502; and be sold alcohol, see 18 Pa.C.S.A. § 6308, cigarettes, see 18 Pa.C.S.A. § 6305, or most kinds of firearms, see 18 Pa.C.S.A. § 6302. Section 6301 makes no mention of exempting emancipated minors or spouses of the offender. We recognize that it is somewhat incongruous for a person not to be guilty of a sexual offense for having consensual sexual intercourse with a minor because it is his or her spouse, see Pa. C.S.A. § 3101 (excluding spouses from definition of "deviate sexual intercourse"), but to be potentially guilty of corruption of a minor for that same act. We must go by the plain meaning of the statute, however, and we leave it to the legislature to change the wording if it so desires.

 ¶ 33 Appellant's next contention involves the jury verdict. Initially, the jury came back with a verdict of guilty of certain charges, but when polled, one juror (Juror # 3) changed his vote to not guilty on all charges. See N.T., 2/19/99, at 70–74. Appellant's counsel moved for a mistrial, but the court sent the jury back to continue to deliberate. See id. at 76. Approximately one hour later, the jury returned with unanimous guilty verdicts on various charges. See id. at 79–82. After the jury was polled, appellant's counsel requested that the court question Juror # 3 as to her vote because counsel had observed the juror "was crying, wiping his eyes. He was in great distress." Id. at 129. The court denied this request because he did not observe the juror crying: "I have only—all I observed is that he sat quietly with his head down." Id. Appellant subsequently filed a Motion for Extraordinary Relief which contained an interview with Juror

# 3 who claimed he was coerced into finding appellant guilty. Appellant now argues that it was error for the court to deny appellant's motion for a mistrial after the juror initially changed his vote and that the court should have interviewed the juror after the second jury poll.

¶ 34 The Rules of Criminal Procedure provide that "[b]efore a verdict, whether oral or sealed, is recorded, the jury shall be polled at the request of any party. Except where the verdict is sealed, if upon such poll there is no concurrence, the jury shall be directed to retire for further deliberations." 42 Pa.R.C.P. 1120(f). By its words, the statute contemplates further deliberations in the case of a juror changing his vote when polled. See Commonwealth v. Lease, 703 A.2d 506, 508 (Pa.Super.1997). Therefore, unless there was prejudice to the defendant, a mistrial was not the proper remedy.

¶ 35 Our Supreme Court has described the standard of review for the denial of a motion for mistrial: " 'A motion for a mistrial is addressed to the discretion of the court. It is primarily within the trial court's discretion to determine whether defendant was prejudiced by the misconduct.' On appeal, our standard of review is whether the trial court abused that discretion." Commonwealth v. Savage, 529 Pa. 108, 602 A.2d 309, 312 (1992) (quoting Commonwealth v. Gardner, 490 Pa. 421, 416 A.2d 1007, 1009 (1980)). Appellant has not presented any evidence that he suffered any unfair prejudice by the further deliberations, and therefore the court did not abuse its discretion in following Rule 1120(f) rather than declaring a mistrial.

 ¶ 36 Appellant argues that he suffered prejudice when the court failed to interview the juror after the second polling. In the present matter, the court found that, contrary to appellant's assertions, the juror was not weeping and that he "clearly indicated that his verdict was guilty." Trial Court Opinion, at 11. This is a factual finding that, in our position as

reviewing court, we cannot say was incorrect.[9]

■ ¶ 37 Appellant's final contention is that the trial judge, Judge John C. Mott, should have recused himself from hearing the case because he had a personal bias against appellant. Appellant initially moved for recusal in his omnibus pre-trial motion, but later withdrew it. He renewed the motion after he obtained new counsel. The court found that appellant had waived the issue and denied the motion as untimely. *See* Trial Court Opinion, at 21 ("Retaining new counsel does not afford a defendant to reassert issues he previously raised and waived.").

■ ¶ 38 It is well-settled that "a party seeking recusal or disqualification must 'raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred.'" *Ware v. United States Fidelity & Guaranty Co.*, 395 Pa.Super. 501, 577 A.2d 902, 904 (1990) (quoting *Goodheart v. Casey*, 523 Pa. 188, 565 A.2d 757, 763 (1989)). While appellant included the request for recusal in his omnibus pre-trial motions, he withdrew it in open court. *See* N.T., 11/3/97, at 2 ("Mr. Campana [Attorney for Defendant]: 'And as far as the motion for recusal of your honor, after consultation with Mr. Stafford and reconsideration of the reasons set forth in our motion, we would request permission to withdraw that motion.'"). Appellant offered no rationale for renewing the motion later, other than that he obtained new counsel. Therefore, it appears that appellant had actual knowledge of the facts underlying his recusal argument. *See Reilly by Reilly v. Southeastern Pennsylvania Transp. Auth.*, 330 Pa.Super. 420, 479 A.2d 973, 989 (1984).

We therefore agree with the trial judge that he waived the issue by withdrawing it.

■ ¶ 39 Even if appellant's motion was timely, the court did not err in denying it. The party who asserts that a trial judge should recuse bears the burden of setting forth specific evidence of bias, prejudice, or unfairness. *See Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312, 318 (1976). "Furthermore, a decision by the trial court against whom the plea of prejudice is made will not be disturbed absent an abuse of discretion." *Commonwealth v. Buehl*, 540 Pa. 493, 658 A.2d 771, 782 (1995). In the present matter, appellant has not demonstrated that Judge Mott's hearing of the case prejudiced him. Moreover, our independent examination of the record confirms this.

■ ¶ 40 On October 1, 1999, appellant filed a motion with us that he characterizes as a "Motion to Remand the Case for a Hearing Based on Additional Evidence." Appellant claims that he has learned that the district attorney offered one of their witnesses, Jeffery Tillery, a plea agreement in an unrelated case in exchange for his testimony against appellant. Mr. Tillery denied such a deal on cross-examination. The motion was filed well before oral arguments were heard in this case, however, and appellant chose not to address it at that time. Further, we find that there is sufficient independent evidence of appellant's guilt. *See Commonwealth v. McCracken*, 540 Pa. 541, 659 A.2d 541, 548 (1995). Therefore, an evidentiary hearing on the alleged new evidence is not warranted, and appellant's motion to remand is **DENIED**.

9. Appellant asserts that the juror's later statements indicate that his vote was coerced. As a rule, "a juror is incompetent to testify as to what occurred during deliberations." *Carter v. United States Steel Corp.*, 529 Pa. 409, 604 A.2d 1010, 1013 (1992). A narrow exception to this rule is that a discharged juror may testify about extraneous influences that may have affected jury deliberations. *See id.*

"Under this exception, the juror may testify only as to the existence of the outside influence, but not as to the effect this outside influence may have had on deliberations." *Id.* In this case, the juror asserted that *inside* influences affected his vote. Therefore, the court correctly declined to consider the interview with Juror # 3 that was attached to appellant's Motion for Extraordinary Relief.

¶ 41 Judgment of sentence **AFFIRMED**.

¶ 42 POPOVICH, J., Concurs in the Result.