J-A07023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NORMAN MICHAEL VEGA | : | |
| | : | |
| Appellant | : | No. 359 MDA 2019 |

Appeal from the Judgment of Sentence Entered September 28, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0004559-2013

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:                **FILED: APRIL 13, 2020**

Appellant, Norman Michael Vega, appeals from the Judgment of Sentence of life without the possibility of parole ("LWOP") imposed after a jury convicted him of one count each of Murder in the First Degree and Retaliation Against a Witness, and two counts of Recklessly Endangering Another Person ("REAP").[1]  He challenges the denial of several of his pre-trial Motions and his post-sentence Motion, the grant of the Commonwealth's Motion for a Protective Order, and the weight of the evidence.  After careful review, we affirm.

We reproduce the trial court's apt summary of the facts below, with relevant additions from the certified record.

> On the evening of October 3, 2004, three men entered the home of Miguel Colon [in Reading] in an attempt to commit an armed

_____

[1] 18 Pa.C.S. §§ 2502(a), 4953(a), and 2705, respectively.

robbery. They were wearing hoods over their heads which were pulled down to obscure their faces. All three men were brandishing guns. In the house that evening were Miguel Colon, his wife Dallanara Colon, their young child, [Miguel's] friend Jason Stief, and Jason's girlfriend Courtnee Salvati. The gunmen moved all the people at the house to the living room and began to interrogate Mr. Colon. At some point, Mr. Colon fled the house and the gunmen followed. Miguel Colon was shot [with at least one .40 caliber bullet] only a few moments later in a nearby alleyway. He died from his wounds. Mr. Stief . . . recognized one of the gunmen as Hector Soto, someone that he had gone to school with. Mr. Stief cooperated with law enforcement by giving a statement to the police identifying Mr. Soto as one of the gunmen. The other two gunmen were never identified by the witnesses of the incident.

[Police officers shortly thereafter stopped a vehicle matching a description of the vehicle at the crime scene. Appellant was driving. A search revealed live bullets of two different calibers in the vehicle, but Appellant was not detained.]

On October 8, 2004, Hector Soto was charged with various crimes concerning the burglary attempt [sic] and murder of Miguel Colon. [paragraph break added].

On October 14, 2004, Jason Stief was sitting in his car at a McDonald's drive through in Reading[]. In the car with him was his girlfriend, Courtnee Salvati, and a friend, Miguel Maldonado. Jason Stief was the driver. While they waited in the line, a hooded person walked up to the car window and shot Jason Stief six times, killing him [with a .9 mm bullet]. No one was initially identified as the shooter.

[While Appellant] was [subsequently] incarcerated on unrelated charges[,]he spoke to several people, stating that he was the shooter of Jason Stief. These people include[d] his cousin Robert Robles, Joseph Gaston, Dean Santana, Patrick Rossi, Luke Williams, Matthew Martin, and Matthew Neider. William Morales also stated that he was at the McDonald's [on] the night of the shooting and saw [Appellant] leaving the scene. Eddie Ayala stated that he drove to Florida with [Appellant] soon after the murders and [Appellant] told him that he was one of the shooters of Miguel Colon and the shooter of Jason Stief.

Trial Ct. Op., dated 5/17/19, at 2-3.

Sergeant Harold Shenk, the Criminal Investigation Supervisor with the Berks County Detectives Office, investigated both the Colon and Stief murders. The Commonwealth ultimately charged Appellant with, *inter alia*, the Murder of both Colon and Stief, and filed a Notice of Intent to Seek the Death Penalty. Appellant filed two pre-trial Motions to Sever the murder offenses, which the court denied after a hearing. Appellant also filed numerous other Motions, which the court denied after numerous hearings, including: (1) two pre-trial Motions to obtain fees for experts on "jailhouse informants;" (2) two pre-trial Motions requesting the Recusal of the Berks County District Attorney's Office; and (3) two Motions *In Limine* requesting, *inter alia*, that the court preclude the admission of the bullets found in Appellant's car during the vehicle stop on October 3, 2004. The Commonwealth filed a Motion for Protective Order, requesting the court to preclude Appellant from taking physical copies of discovery materials back to prison. The court held a hearing at which Sergeant Shenk testified. The court granted the Commonwealth's Motion.[2]

A jury trial commenced on August 13, 2018, at which the Commonwealth presented the testimony of witnesses to the attempted

---

[2] The court granted the Commonwealth's Motion to Continue the Protective Order filed just before Appellant's sentencing hearing.

robbery of Colon and the murder of Stief, numerous individuals to whom Appellant had confessed his involvement in both murders, and investigating police officers, including Sergeant Shenk. Appellant presented no witnesses.

The jury convicted Appellant of First-Degree Murder for Stief's murder, Retaliation Against a Witness, and two counts of REAP. The jury found him not guilty of Colon's murder. The Commonwealth withdrew its Notice of Intent to Seek the Death Penalty, and the court ordered a Pre-Sentence Investigation ("PSI").

On September 28, 2018, the court sentenced Appellant to LWOP. Appellant filed a Post-Sentence Motion, which the court denied.

Appellant filed a timely Notice of Appeal. Appellant filed an ordered Pa.R.A.P. 1925(b) Statement and the trial court filed a responsive Rule 1925(a) Opinion.

Appellant presents the following issues for our review:

1. Were Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1 sec. 9 of the Pennsylvania Constitution violated when the [t]rial [c]ourt denied Appellant's Motion to Sever on August 21, 2015[,] and again on April 21, 2016?

2. Were Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1 sec. 9 of the Pennsylvania Constitution violated when the [t]rial [c]ourt denied Appellant's request for payment of fees for retention of an expert on "jailhouse informants"?

3. Were Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1 sec.

9 of the Pennsylvania Constitution violated when the [t]rial [c]ourt denied Appellant's May 16, 2017 and December 6, 2017 Motions to Recuse the Berks County District Attorney's Office?

4. Were Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1 sec. 9 of the Pennsylvania Constitution violated when the [t]rial [c]ourt denied Appellant's Motion *in Limine* to preclude the admission of ballistics evidence on July 24, 2018[,] and again on August 10, 2018?

5. Were Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1 sec. 9 of the Pennsylvania Constitution violated when the [t]rial [c]ourt erred in granting the Commonwealth's Motion for Protection Order on February 20, 2014 and the Commonwealth's Motion to Continue Protective Order on September 26, 2018?

6. Were the verdicts [ ] against the weight of the evidence and the [t]rial [c]ourt committed reversible error when it denied Appellant's Post-Sentence Motion on January 29, 2019?

7. Did the [t]rial [c]ourt commit reversible error when it denied Appellant's Post-Sentence Motion to Vacate the Sentence of Mandatory Life Imprisonment?

Appellant's Brief at 3-4.

Issue 1 – Motion to Sever

Appellant asserts that the trial court abused its discretion in denying his Motions to Sever, stating that the two murder charges were not based on the same act or transaction, and that they were two different crimes, two different victims, two different dates and at two different places. Appellant's Br. at 11. Appellant contends that the jury was incapable of separating the evidence regarding each murder, noting inconsistent witness testimony, *i.e.,* contradictions during a witness's testimony as well as contradictions among

different witnesses' testimony.[3] *Id.* at 12-16. He claims that the split verdict is evidence of the jury's confusion. *Id.* at 16. Appellant asserts that he was prejudiced because the court's refusal to sever the charges impacted his tactical determination on whether to testify and he was, thus, "forced to give up his constitutional right to testify on his own behalf [regarding the Colon murder] in order to enforce his constitutional right to remain silent [regarding the Stief murder]." *Id.* at 16.

Our standard of review from the denial of a Motion to Sever is well-settled:

> A motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.

*Commonwealth v. Dozzo*, 991 A.2d 898, 901 (Pa. Super. 2010) (citation omitted).

In proving that the decision not to sever the cases prejudiced the defendant, the defendant must show "real potential for prejudice rather than mere speculation." *Commonwealth v. Rivera*, 773 A.2d 131, 137 (Pa. 2001).

Pa.R.Crim.P. 582 provides, in relevant part, that "[o]ffenses charged in separate indictments or informations may be tried together if: (a) the

---

[3] The contradictions in testimony relate to the weight of evidence, which is a challenge he raised and we address *infra*.

- 6 -

evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[.]" Pa.R.Crim.P. 582(A)(1)(a). However, where it appears that the trial of offenses together might prejudice a party, the trial court may order separate trials of offenses. *See* Pa.R.Crim.P. 583.

"Where a defendant moves to sever offenses not based on the same act or transaction . . . the court must [ ] determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses." *Dozzo*, 991 A.3d at 902 (quoting *Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997)).

Here, the trial court determined that evidence related to the murder of Mr. Stief would be admissible in a separate trial for the murder of Mr. Colon because "there was a strong implication that the murder of Jason Stief on October 14, 2004[,] was predicated on his being a witness and informant for the October [3], 2014 murder of Miguel Colon." Trial Ct. Op., dated 5/17/19, at 4. The court noted that the Commonwealth's theory of the murders was that Appellant murdered Mr. Stief because he was involved in the murder of Mr. Colon. *Id.* Additionally, the court concluded that the jury was able to

distinguish between the two charges because it found Appellant guilty of the Stief murder and not guilty of the Colon murder. *Id.*

After review of the certified record and the relevant case law, we conclude that the trial court did not abuse its discretion in denying the Motions to Sever. Appellant's claim that the court's decision prejudiced him by "forc[ing him] to give up his constitutional right to testify on his own behalf [regarding the Colon murder] in order to enforce his constitutional right to remain silent [regarding the Stief murder]" is simply a bald allegation. Appellant has failed to articulate any actual prejudice or why he was forced to give up his constitutional right. Additionally, as noted by the trial court, Appellant's concession that the jury acquitted him of the charges related to Mr. Colon's murder undermines his claim that the jury was incapable of separating the evidence against him. Accordingly, this issue warrants no relief.

Issue 2 – Denial of funds for expert witnesses

Appellant next asserts that the court improperly denied his requests for payment of expert witness fees concerning jailhouse informants. He asserts that the jailhouse informant experts were necessary because the jailhouse informants' testimony was critical to the Commonwealth's case and the experts would provide the jury with specialized information regarding slang, motivations of informants, benefits and compensation of informants, and the unreliability of jailhouse informant testimony. Appellant's Br. at 22-23.

The decision to appoint an expert witness is within the sound discretion of the trial court. *Commonwealth v. Abdul-Salaam*, 678 A.2d 342, 352 (Pa. 1996). The trial court's determination will not be disturbed absent a clear abuse of that discretion. *Id.* (citation omitted).

A defendant in a capital case is entitled to the assistance of experts necessary to prepare a defense. *Id.* However, expert testimony is admissible only where "formation of an opinion on a subject requires knowledge, information, or skill beyond that possessed by the ordinary juror." *Commonwealth v. Simmons*, 662 A.2d 621, 630-31 (Pa. 1995) (citation omitted). "Expert opinion cannot be offered to intrude upon the jury's basic function of deciding credibility." *Id. See, e.g*., *Commonwealth v. Spence*, 627 A.2d 1176, 1182 (Pa. 1993) (testimony of psychologist as to the effects of stress upon people who are called to make identifications was properly excluded); *Commonwealth v. Gallagher*, 547 A.2d 355 (Pa. 1988) (error to allow expert witness in the area of rape trauma to explain that such trauma could prevent a victim from making a timely identification of assailant); *Commonwealth v. Davis*, 541 A.2d 315 (Pa. 1988) (error to allow expert to testify that child sex abuse victims generally lack the ability to fabricate stories of sexual experiences).

In *Commonwealth v. Abdul-Salaam*, our Supreme Court concluded that the trial court properly denied the defendant's motion for the payment of expert witness expenses with respect to an expert on eyewitness identification

- 9 -

because the expert witnesses were unnecessary for the defense. 678 A.2d at 352. The Court determined that the testimony concerning the reliability of eyewitness identification by an expert "would have given an unwarranted appearance of authority as to the subject of credibility." *Id.* (quoting *Simmons*, *supra* at 631). The Court further noted that the parties could attack an eyewitnesses' credibility through cross-examination and in closing argument. *Id*.

Here, the trial court determined that the jailhouse informant experts were unnecessary for Appellant's defense and, therefore, denied Appellant's Motion for fees to retain the jailhouse informant expert witnesses. Trial Ct. Op. at 5. We agree with the trial court that the experts were unnecessary for Appellant's defense. Appellant was free to question the jailhouse informant witnesses on specific slang and attack their credibility, including eliciting information regarding the witnesses' motivations, and pointing out inconsistencies of all the witnesses at trial through cross-examination and in closing argument. *See Abdul-Salaam*, *supra* at 352. Accordingly, the trial court did not abuse its discretion in denying the Motions for expert fees.

Issue 3 – Motions to Recuse Berks County DA

Appellant contends that the trial court abused its discretion by failing to grant his Motions to Recuse the Berks County District Attorney's Office. Berks County District Attorney, John Adams, was previously a defense attorney in private practice who, Appellant claims, had previously represented him, Mr. Soto, and many of the jailhouse informants. Appellant's Br. at 25-26. He asserts that "attorneys have an ongoing duty not to work against the interests of their former clients." *Id.* at 25. (emphasis omitted) (citing ***Commonwealth v. King***, 212 A.3d 507 (Pa. 2019) and Rules of Professional Conduct). Therefore, the court should have ordered the District Attorney's Office to recuse from the case. *Id.*

We review an order denying a motion to recuse a district attorney for abuse of discretion. ***Commonwealth v. Stafford***, 749 A.2d 489, 494 (Pa. Super. 2000). A district attorney should be disqualified where "an actual conflict of interest affecting the prosecutor exists in the case." *Id.* (quoting ***Commonwealth v. Eskridge***, 604 A.2d 700, 702 (Pa. 1992). A mere allegation or appearance of impropriety or animosity is insufficient to establish an actual conflict of interest. ***Commonwealth v. Sims***, 799 A.2d 853, 856-57 (Pa. Super. 2002); ***Stafford***, 749 A.2d at 495.

Courts review the facts of the case and any remedial measures to determine whether any actual conflict of interest exists. ***Commonwealth v. Faulkner,*** 595 A.2d 28, 38-39 (Pa. 1991). Situations where courts have found

an actual conflict of interest include: where a district attorney's private law partners represented the victims of the accident in civil suits against the defendant, *Eskridge*, 604 A.2d at 701; and where the assistant district attorney was involved in a romantic relationship with the defendant's wife, *Commonwealth v. Balenger*, 704 A.2d 1385, 1386 (Pa. Super. 1997).

This Court has recognized that many lawyers who work for the government came from private practice.

> [Thus, we must] rely upon the integrity of the district attorneys of this Commonwealth not to participate in the prosecution of cases when such participation would generate an appearance of impropriety. . . . [T]he government's ability to function would be impaired if disqualification of one lawyer automatically resulted in disqualification of his agency. Where a lawyer who has represented a criminal defendant joins a prosecutor's office, disqualification of the entire office is not necessarily appropriate. That lawyer is of course disqualified from participating in the case on behalf of the prosecution. But individual rather than vicarious disqualification is the general rule.

*Commonwealth v. Miller*, 422 A.2d 525, 529 (Pa. Super. 1980). *See also Commonwealth v. Ford*, 650 A.2d 433, 443 (Pa. 1994) (no conflict where defendant's trial judge became DA of the county while defendant's case was pending, because DA disqualified and screened herself from any participation in the case after becoming DA); *Commonwealth v. Harris*, 460 A.2d 747, 749 (Pa. 1983) (no conflict of interest where the Chief Public Defender, who did not represent defendant at trial, became DA at the time that defendant filed post-conviction relief petition).

Here, the trial court concluded that no conflict of interest existed. Trial Ct. Op. at 6. The court noted that at the recusal hearing, DA Adams testified that he had no memory of representing Appellant or the jailhouse informants. *Id.* Additionally, DA Adams testified that he was not involved in the prosecution of this case. *Id.*

After careful review of the record and the relevant case law, we agree with the trial court that no conflict of interest existed. DA Adams had no pecuniary or personal interest, nor did he participate in the prosecution of Appellant.[4] Accordingly, the trial court did not abuse its discretion in denying the Motions.

Issue 4 – Admission of bullet from vehicle

Appellant asserts that the trial court erred in denying his Motions *in Limine* to preclude the admission of evidence of a live bullet found in his car

---

[4] Appellant's reliance on **Commonwealth v. King** and Rules of Professional Conduct is misplaced. **King** and the Rules do not state that "attorneys have an ongoing duty not to work against the interests of their former clients." Appellant's Br. at 25. Instead, the Rules state that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." Pa.R.P.C. 1.9(a). Additionally, a lawyer has an ongoing duty to his former client to maintain the confidentiality of information related to his representation of the client. Pa.R.P.C. 1.6(a); **King**, *supra* at 510. The cases in which DA Adams allegedly represented Appellant and jailhouse informants were unrelated to the instant matter.

three hours after Mr. Colon's murder.[5] Appellant's Br. at 32. He contends that the prejudice of admitting the bullet outweighed its limited probative value because the bullet did not match the caliber of bullets at the Colon murder, and the jury could infer he was a career criminal and had access to either murder weapon, which he asserts was not supported by the trial record. *Id.* at 34.

The admissibility of evidence lies "within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion." *Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citations omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Nypaver*, 69 A.3d 708, 716 (Pa. Super. 2013) (citations omitted).

To be admissible, evidence must be relevant. *See* Pa.R.E. 401, 402. However, the court may exclude relevant evidence if it determines that its probative value is outweighed by the risk of unfair prejudice. Pa.R.E. 403. "'Unfair prejudice' means a tendency to suggest [a] decision on an improper

---

[5] Appellant's Brief discusses one bullet. However, his Motions *in Limine* discuss two bullets found during the vehicle stop. We assume Appellant is referring to the .9 mm bullet—the same type of bullet which was used in the Stief murder.

- 14 -

basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id.*, cmt.

The trial court found that the bullet was relevant to show that Appellant "likely had access to firearms, and as one of the bullets was the same caliber as the bullets at the [Stief] murder, he possibly had access to the murder weapon as well." Trial Ct. Op. at 7. The court recognized that there was some prejudice in admitting the bullet evidence; however, it determined that the probative value outweighed any prejudice. *Id.* at 7. Further, the court noted that the prejudice must have been limited because the jury found Appellant not guilty of the Colon murder. *Id.* at 8.

We discern no error in the trial court's consideration of the probative value of this evidence against its prejudicial impact. As discussed by the Court, the .9 mm bullet was relevant to the Stief murder. Although a .9 mm caliber bullet was not used in the Colon murder, the jury's finding Appellant not guilty of the Colon murder evidences the minimal prejudicial impact of the admission of the bullet.

Issue 5 - Commonwealth's Motion for Protective Order

Appellant next asserts that the trial court erred in granting the Commonwealth a Protective Order and a Continuance of the Protective Order through the appellate process. Appellant avers that a protective order prevents him and his counsel from reviewing thoroughly the materials necessary for his defense prior to and during the trial, appellate, and post-

conviction process. Appellant's Br. at 40, 43. Additionally, he argues that the Order and continuance were unwarranted because he had not been charged with witness intimidation and the release of the documents would not jeopardize the jailhouse informants or the Commonwealth's investigation. *Id.* at 39, 42-43.

Questions involving discovery in criminal cases lie within the discretion of the trial court. *Commonwealth v. Rucci*, 670 A.2d 1129, 1140 (Pa. 1996). Pennsylvania Rule 573 of Criminal Procedure provides, in relevant part, "[u]pon a sufficient showing, the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate." Pa.R.Crim.P. 573(F).

At the Protective Order hearing, Detective Shenk testified that Mr. Soto had also been charged with Mr. Colon's murder. He stated a witness against Mr. Soto informed him that Appellant confronted him and suggested that he not testify against Mr. Soto. Detective Shenk testified that three witnesses against Mr. Soto, all of whom were incarcerated, had altercations in prison— one was called a rat by another inmate; another had a document with his picture and name, calling him a snitch circulated around prison; and the other had his face cut open by another inmate and his mother was threatened at a grocery store. P.O. Hearing, 2/20/14, at 10-16. Detective Shenk testified that during a November 2013 search of Appellant's prison cell, paperwork was uncovered which listed the names, prison ID numbers, and locations of

witnesses involved "in the investigation." *Id.* at 21. Additionally, Mr. Shenk stated he received, from someone related to Appellant, a copy of a report that was generated by the district attorney's office. *Id.* at 17-18.

Upon review of the record, we conclude that the trial court did not abuse its discretion in granting the Commonwealth a limited Protective Order precluding Appellant from having copies of the discovery material, and continuing the Protective Order throughout the appellate process. The court emphasized that Appellant was able to review discovery; however, he was not able to possess and copy the material. Trial Ct. Op. at 8. The court explained that it granted the limited Protective Order out of an abundance of caution because the Commonwealth brought charges against Appellant for retaliation against a witness. Further, the Commonwealth presented evidence suggesting that if Appellant had access to the discovery documents, he may inform friends or family to intimidate or threaten witnesses. *Id.* No relief is due on this claim.

Issue 6 – Weight of the Evidence

Appellant next asserts that, because the Commonwealth did not present eyewitness identification testimony and no forensic, photographic, or DNA evidence, the verdicts were against the weight of the evidence. Appellant's Br. at 45. Appellant contends that the verdicts cannot stand because the Commonwealth's case was based on unreliable, questionable, and inconsistent

testimony from multiple jailhouse informants who had significant self-interest at stake. *Id.* at 45-46.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the

verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Id.*** (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Id.*** (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

In addressing the weight challenge, the trial court reviewed the witnesses' testimony supporting the Appellant's convictions, including the jailhouse informants. Trial Ct. Op. at 9. The court concluded that it was not against the weight of the evidence for the jury to credit the jailhouse informants' testimony against Appellant, noting that multiple witnesses had very similar stories involving Appellant. ***Id.*** Further, the court noted that non-jailhouse informants also testified against Appellant. ***Id.***

Appellant essentially asks us to reassess the credibility of the jailhouse informants and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record indicates that the evidence supporting the jury verdict is not tenuous, vague, or uncertain, and the verdict was not so contrary as to shock the court's conscience. We discern no abuse of discretion in the trial court's denial of Appellant's weight challenge.

Issue 7 – Denial of Post-Sentence Motion

Appellant last argues that the trial court erred in denying his Post-Sentence motion because the Commonwealth did not affirmatively prove at trial that defendant was over 18 years old at the time of the commission of the First-Degree Murder in order to impose a mandatory life sentence. Appellant's Br. at 47. No relief is due.

A claim challenging a sentencing court's legal authority to impose a particular sentence presents a question regarding the legality of the sentence. **Commonwealth v. Hernandez**, 217 A.3d 873, 878 (Pa. Super. 2019). Thus, our scope of review is plenary and our standard of review is *de novo*. **Commonwealth v. Alston,** 212 A.3d 526, 528 (Pa. Super. 2019).

Murder of the first degree is defined as "[a] criminal homicide . . . committed by an intentional killing." 18 Pa.C.S. § 2502(a). To sustain a First-Degree Murder conviction "the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with malice and specific intent to kill." **Commonwealth v. Hitcho**, 123 A.3d 731, 746 (Pa. 2015). Pursuant to 18 Pa.C.S. § 1102(a)(1) "except as provided under section 1102.1 (relating to sentence of persons under the age of 18 for murder . . . ), a person who has been convicted of a murder of the first degree . . . shall be sentenced to death or to a term of life imprisonment[.]"

After review of the record, we agree with the trial court's analysis that "[t]here is no requirement in statute or case law that . . . the Commonwealth [must] affirmatively prove that the [d]efendant was over the age of 18 at the time of the offense" to impose a sentence of life imprisonment. Trial Ct. Op. at 10. Appellant does not cite to case law or statute that supports his proposition.[6] Additionally, as the trial court noted, the record indicates Appellant's date of birth is April 2, 1983. *Id.* at 10. Therefore, he was 21 years old when Mr. Stief was killed. Accordingly, this issue warrants no relief.

Conclusion

Having concluded that none of Appellant's issues warrant relief, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judge Olson joins the memorandum.

Judge McLaughlin concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/13/2020

---

[6] Appellant cites to a concurring opinion in ***Commonwealth v. Bavusa***, 832 A.2d 1042 (Pa. 2003), which discussed an exceptions clause in the statute defining the crime of Carrying a Concealed Weapon without a License. Here, that exception clause is not included in the statutory definition of Murder of the First Degree.