J-S28041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABRAHAM CRUZ, JR. | : | |
| | : | |
| Appellant | : | No. 1638 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 22, 2019
in the Court of Common Pleas of Adams County
Criminal Division at No(s):  CP-01-CR-0001343-2015

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:　　　　　**FILED SEPTEMBER 16, 2020**

Abraham Cruz, Jr. ("Cruz"), appeals from the judgment of sentence entered following his convictions of two counts of each of first-degree murder, second-degree murder, and third-degree murder, and one count each of conspiracy, burglary, and arson.[1]  We affirm.

This case involves a procedural history spanning several decades.  On the night of August 30, 1980, Cruz, along with his uncle, Erasmo Cruz ("Erasmo"), Adelberto Andujar ("Andujar"), and Ruperto Garcia ("Garcia"),[2] traveled from Harrisburg to the home of Erasmo's seventeen-year-old ex-girlfriend, Deborah Patterson ("Deborah"), in Freedom Township, Adams

---

[1] 18 Pa.C.S.A. §§ 2502(a)-(c), 903(a)(1), 3502(a), 3301(a)(1)(i).

[2] At the time of the murders, Cruz was 19 years old, Erasmo was 23, and Andujar and Garcia were juveniles.

County. Upon arriving, they parked their car nearby, on the side of State Route 15, and prepared several incendiary devices with gasoline and empty beer bottles. Cruz and his accomplices approached the residence on foot. Upon reaching the residence, they ignited the incendiary devices and threw them into the house, which started a fire. They forced their way into the residence, and once inside, Paul Sell, the husband of Deborah's mother, Nancy Patterson ("Nancy"), was shot with a shotgun. Mr. Sell survived his wounds.[3] Nancy, Deborah, and two children were able to escape the residence. However, Nancy was shot and killed in the yard, and Deborah was shot and killed as she attempted to hide underneath a truck parked outside. Two other children in the residence were unharmed, and escaped to a neighbor's house, where they called police.

Following an initial investigation, Keith Patterson ("Keith"), Nancy's son and Deborah's brother, was arrested and charged with Nancy and Deborah's murder. Keith eventually went to trial in 1981, where he was acquitted. The case went cold until 2008, when police eventually connected Erasmo and Cruz to the murders.

_____

[3] Mr. Sell died prior to Cruz being charged with the above-referenced crimes.

After being apprehended in Puerto Rico, Cruz was charged with the above-referenced crimes in August 2015.[4] A lengthy procedural history followed that is not relevant to the instant appeal. Just prior to trial, Cruz filed a Motion *in limine*, seeking, in part, to exclude several photographs depicting Nancy and Deborah's bodies from being admitted into evidence, and objecting based upon his inability to ask potential jurors about such photographs during *voir dire*. Following a hearing, the trial court determined that two of the photographs were admissible.

Cruz's trial took place on June 3-5, 2019, after which the jury convicted him of the above-referenced crimes. The trial court deferred sentencing for the preparation of a pre-sentence investigation report. On August 22, 2019, the trial court sentenced Cruz to two consecutive terms of life in prison, without the possibility of parole, for his two first-degree murder convictions. The trial court sentenced Cruz to a consecutive prison term of five to ten years for his conviction of conspiracy. For his convictions of conspiracy and burglary, the trial court imposed prison terms of 10 to 20 years, to be served concurrent with each other and with Cruz's conspiracy conviction.[5] Cruz filed a post-

---

[4] In 2014, Erasmo and Garcia both entered guilty pleas related to the events on the night in question, and each testified against Cruz at trial. Andujar is deceased.

[5] Cruz's second-degree murder and third-degree murder convictions merged with the two first-degree murder convictions for sentencing purposes.

sentence Motion, which the trial court denied. Cruz filed a timely Notice of Appeal[6] and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Cruz raises three issues for our review:

1. Whether the [t]rial [c]ourt abused its discretion and/or made an error of law for [*sic*] admitting graphic photographs depicting the deceased victims, when said photographs were inflammatory and unnecessary to explain extraneous evidence[?]

2. Whether the [t]rial [c]ourt abused its discretion and/or made an error of law when it failed to *voir dire* the jury regarding graphic inflammatory photographs depicting the deceased victims[?]

3. Whether the [t]rial [c]ourt abused its discretion and/or made an error of law when it denied defense counsel's [M]otion for a mistrial after redirect examination of [Commonwealth] witness Wanda Garrison[ ("Garrison"), after t]he [trial c]ourt erroneously ruled that defense counsel had opened the door to permit the improper question on redirect examination[?]

Brief for Appellant at 8 (renumbered).

Cruz first argues that the trial court erred in admitting the photographs of the victims' bodies into evidence, as they were inflammatory. ***Id.*** at 24-29. Cruz asserts that the prejudicial nature of the inflammatory photographs outweighed any probative value they had, especially given that Cruz had stipulated to the manner of death. ***Id.*** at 28-29.

---

[6] We note that Cruz's timely Notice of Appeal improperly states that the appeal is from the trial court's denial of his post-sentence Motion, not the judgment of sentence. ***See Commonwealth v. Chamberlain***, 658 A.2d 395, 397 (Pa. Super. 1995) (stating that a criminal appeal properly lies from the judgment of sentence). We have corrected the caption accordingly.

"Our standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion." *Commonwealth v. Melvin*, 103 A.3d 1, 35 (Pa. 2014). Our Supreme Court set out the relevant standard of review for the admission of potentially inflammatory photographs of the victim:

> It has been a steadfast principle of our jurisprudence that pictures of the victim are not *per se* inadmissible. In relation to the admissibility of these photographs, we have promulgated the following test:

>> [A] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. If an inflammatory photograph is merely cumulative to other evidence, it will not be deemed admissible.

> The admissibility of photos of the corpse in a homicide case is a matter within the discretion of the trial court, and only an abuse of discretion will constitute reversible error. As we also explained …:

>> A criminal homicide trial is, by its very nature, unpleasant, and the photographic images of the injuries inflicted are merely consonant with the brutality of the subject of inquiry. To permit the disturbing nature of the images of the victim to rule the question of admissibility would result in exclusion of all photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor. There is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the

> Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt. Further, the condition of the victim's body provides evidence of the assailant's intent, and, even where the body's condition can be described through testimony from a medical examiner, such testimony does not obviate the admissibility of photographs.

**Commonwealth v. Robinson**, 864 A.2d 460, 501-02 (Pa. 2004) (citations omitted).

Here, the record reflects that, a few days prior to trial, the Commonwealth informed defense counsel that it planned to introduce several photographs of the murder scene at trial. Cruz filed a Motion *in limine* to preclude admission of the photographs. After a hearing, the trial court determined that it would allow the Commonwealth to introduce two black and white photographs: one depicting Deborah's body, and the other depicting Nancy's body. N.T. (Trial), 6/3/19, at 10.[7]

The trial court, in admitting the photographs, determined that they were not inflammatory. Trial Court Opinion, 12/4/19, at 6. Upon our review of the record, we agree. Our review discloses that the first photograph depicts

_____

[7] The record reveals that two photographs of Nancy and Deborah's bodies were introduced at Cruz's preliminary hearing. Shortly before trial, the Commonwealth alerted Cruz that it intended to introduce three full-color photographs: one depicting Nancy's body, and two depicting Deborah's body from different distances. At a hearing on Cruz's Motion *in limine*, the morning the trial was set to begin, the trial court determined that a black and white photograph of Nancy's body was admissible, as well as a black and white photograph of Deborah's body, taken from further away, as it was less graphic than the one introduced at the preliminary hearing. N.T. (Trial), 6/3/19, at 8-10.

Deborah's body lying face-up, underneath a vehicle, with a dark mark underneath her head. Commonwealth's Exhibit 6; *see also* N.T. (Trial), 6/3/19, at 61 (wherein Commonwealth's Exhibit 6 was admitted into evidence). The second photograph depicts Nancy's body lying face-down in a grassy area with what appears to be a wound to her upper back. Commonwealth's Exhibit 7; *see also* N.T. (Trial), 6/3/19, at 61-62 (wherein Commonwealth's Exhibit 7 was admitted into evidence). Each photograph is taken from several feet away from the bodies. Neither photograph shows a close or clear depiction of the injuries to either body; in fact, it is difficult to discern whether the dark spot beneath Deborah's head is blood, hair, a shadow, or part of the vehicle. While it can be easily inferred from the context of the photographs that Nancy and Deborah are deceased, the trial court's determination that the photographs were not inflammatory is supported in the record. Trial Court Opinion, 12/4/19, at 6.

Because the trial court determined that the photographs were not inflammatory, the photographs were admissible if relevant, and could assist the jury in their understanding of the facts. *Robinson*, *supra*. Upon review, we discern no abuse of discretion in the trial court's decision to admit these photographs. The record reflects that the trial court carefully weighed the evidentiary value and relevance of the photographs that the Commonwealth sought to introduce, and excluded all but two black and white photographs, finding that they were probative in corroborating witness testimony nearly 40

years after the murders, and demonstrating intent to kill as a required element of first degree murder. *See* Trial Court Opinion, 12/4/19, at 7 (wherein the trial court states that the photographs were relevant to corroborate eyewitness testimony and demonstrate Cruz's specific intent). Additionally, the trial court issued a cautionary instruction. *See* N.T. (Trial), 6/5/19, at 363 (wherein the trial court instructs the jury that they "should not … let those photographs and the nature of those photographs stir up emotions to the prejudice of [Cruz]. Your verdict must be based on the rational and fair consideration of all the evidence[,] and not on passion or prejudice against [Cruz.]"). We presume that the jury follows a trial court's instruction. *Commonwealth v. Baez*, 720 A.2d 711, 735 (Pa. 1998). Accordingly, this claim fails.

In his next issue, Cruz argues that the trial court abused its discretion when it failed to properly *voir dire* the jury about the photographs prior to trial. Brief for Appellant at 16-17, 29. According to Cruz, the Commonwealth's decision to pursue introduction of the photographs shortly before trial, and after the jury was selected, deprived Cruz of the opportunity to question potential jurors about the effect that such photographs would have on their ability to render a fair and impartial verdict. *Id.* at 29.

"The scope of *voir dire* rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error." *Commonwealth v. Karenbauer*, 715 A.2d 1086, 1094 (Pa. 1998) (citation

omitted). "The purpose of *voir dire* is to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court." **Commonwealth v. Manley**, 985 A.2d 256, 264 (Pa. Super. 2009) (citation omitted).

Keeping in mind the foregoing discussion, we discern no palpable error in the trial court's decision not to conduct a supplemental *voir dire* of the jury as to the photographs. Because the trial court determined that the photographs were not inflammatory, a supplemental *voir dire* was unnecessary. The record reveals no evidence indicating an inability of the jurors to be fair or impartial in rendering Cruz's verdict, nor is there any evidence that the jurors did not listen to the trial court's cautionary instructions. **See id.**; **see also Commonwealth v. Bridges**, 757 A.2d 859, 872 (Pa. 2000), *abrogated in part on other grounds*, **Commonwealth v. Freeman**, 827 A.2d 385 (Pa. 2003) (determining that the trial court did not abuse its discretion when it refused to ask potential jurors one of the defendant's proposed *voir dire* questions, when the record showed that the trial court properly exercised its discretion in ensuring the paneling of a fair and impartial jury). Accordingly, we discern no abuse of discretion or palpable error in this regard. **See Karenbauer**, **supra**.

In his third issue, Cruz argues that the trial court erred when it denied his Motion for a mistrial after the redirect examination of Garrison. Brief for Appellant at 29. According to Cruz, following his cross-examination wherein

he questioned Garrison about a 2012 interview she had with the Pennsylvania State Police, the Commonwealth referenced an earlier interview Garrison had with police in 2009 during its redirect. *Id.* at 31-33. Cruz argues that the Commonwealth's questioning on redirect was improper, as the parties had previously agreed to narrowly tailor their questioning regarding the 2009 interview. *Id.* at 30. Specifically, Cruz claims that the trial court erred when it determined that Cruz had "opened the door" to the disputed questioning in its cross-examination. *Id.* at 34. Cruz asserts that the Commonwealth's reference to the 2009 interview "created inaccurate inferences about the content and context of [] Garrison's statements to police, thus undermining the truth determining process." *Id.* at 33-34.

> A motion for a mistrial is within the discretion of the trial court. **Commonwealth v. Stafford**, 749 A.2d 489, 500 (Pa. Super. 2000) (citations omitted). "[A] mistrial [upon motion of one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." **Commonwealth v. Lease**, 703 A.2d 506, 508 (Pa. Super. 1997). It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. **Id.** On appeal, our standard of review is whether the trial court abused that discretion. **Stafford**, 749 A.2d at 500.

**Commonwealth v. Tejada**, 834 A.2d 619, 623 (Pa. Super. 2003) (footnote omitted).

The scope of redirect examination is largely within the discretion of the trial court. **Commonwealth v. Dreibelbis**, 426 A.2d 1111, 1117 (Pa. 1981). When a party raises an issue on cross-examination, it is no abuse of discretion

- 10 -

for the court to permit redirect on that issue to dispel any unfair inferences. *Id.*

Garrison testified on behalf of the Commonwealth at trial. Because of a history of alleged abuse by Cruz against Garrison, the parties agreed, prior to her testimony, to avoid eliciting any statements by Garrison about the alleged abuse, unless the defense opened the door on cross-examination. N.T. (Trial), 6/3/19, at 148-49. Specifically, Garrison testified that Cruz had admitted to her while they were dating in the 1980's that he had shot and killed Deborah. *Id.* at 154-56. On cross-examination, Cruz's counsel asked Garrison about Cruz's level of intoxication when he admitted that he had killed Deborah, whether Garrison stated as such to police during a September 2012 interview, and whether she had performed any independent research into the murders prior to the 2012 police interview. *Id.* at 156-57. On redirect examination, the Commonwealth asked the following:

> [Commonwealth:] Ms. Garrison, you actually told the police – you were interviewed in 2012, but you actually told them that a couple years prior, right? You were first interviewed in 2009 by this [Pennsylvania State Police] trooper beside me?
>
> [Garrison:] Yes.
>
> [Commonwealth:] Then you had another interview later on where this trooper was again there along with your attorney in Mechanicsburg?
>
> [Garrison:] Yes.

*Id.* at 158. Defense counsel did not object, but requested a sidebar, wherein the parties discussed how to best approach the issue going forward. *Id.* at

159-62. The next day, prior to testimony, defense counsel moved for a mistrial on the same basis. ***See*** N.T. (Trial), 6/4/19, at 198. The trial court denied the Motion on the grounds that the Commonwealth's questioning on redirect was a proper rehabilitation of the witness. ***Id.*** at 197-99.

We discern no abuse of discretion in the trial court's ruling. Our review of the record discloses that during cross-examination, Cruz's trial counsel asked Garrison whether she had researched the murders prior to her interview with police in September 2012. N.T. (Trial), 6/3/19, at 157. On redirect, the Commonwealth questioned Garrison about whether she had also been interviewed by police in 2009. ***Id.*** at 158. The Commonwealth sought to admit this testimony to negate the inference that Garrison had first spoken to the police in 2012, after she had already independently researched the murder online. ***Id.*** at 158-59 (wherein the Commonwealth states to the trial court at sidebar, "[Cruz] indicated the first time [Garrison] ever talked to police was in 2012. She was also interviewed in 2009 … [t]he question I was rehabilitating on was the first time she talked to the police[.]"); ***see also*** N.T. (Trial), 6/4/19, at 198 (wherein the Commonwealth states, "[t]here was a question asked of the witness[, ']is this the first time you talked to police?[']  I followed that up with a rehabilitative question, [']no, you talked to them in 2009.[']"). Based upon the foregoing, the jury could not reasonably infer a history of abuse by Cruz. Because the challenged questions did not impact the conduct of a fair and impartial trial, this claim fails. ***See id.***

- 12 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/16/2020